**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

TERENCE NASHAWN GLENN,

Plaintiff,

v. Civil Action No. 1:26-cv-11683-IT

EIGHTFOLD AI INC.,

Defendant.

**MEMORANDUM IN SUPPORT**
**OF DEFENDANT EIGHTFOLD AI INC.'S MOTION TO DISMISS**

Eightfold AI Inc. provides artificial-intelligence software that employers use in hiring. Terence Nashawn Glenn, a pro se plaintiff, has filed at least a dozen actions in this Court this year. His First Amended Complaint ("FAC") in this case alleges no direct interaction between Glenn and Eightfold. It has two counts.

Count I invokes the Fair Credit Reporting Act but identifies no consumer report about Glenn, no inaccuracy, and no disclosure request. Generalized descriptions—"shadow dossiers," "massive datasets," and "algorithmic profiling tools"—do not fill those gaps.

Count II, under the Americans with Disabilities Act, fares no better. Glenn says that third parties retaliated against him after unspecified protected activity, and he blames Eightfold because those parties used its software. Yet the FAC attributes the alleged "soft hold" and platform lockout—the acts that supposedly interfered with Glenn's ADA rights—to third parties, not Eightfold. Glenn never identifies the ADA right he exercised or any act by Eightfold that coerced, intimidated, threatened, or interfered with him.

The Court should dismiss the FAC.

## BACKGROUND

The FAC alleges that Eightfold provides "algorithmic screening and profiling tools" to its corporate clients. FAC ¶ 2. It further alleges that Eightfold extracts "massive datasets," builds "shadow dossiers," and packages data into tools—including a "0-5 Match Score"—to "filter, rank, and predict" behavior. *Id.* ¶¶ 5–6.

The FAC never says what information Eightfold obtained about Glenn, where it came from, or what Eightfold communicated about him to anyone. It alleges only that Eightfold's corporate clients use Eightfold's profiles for "platform and employment decisions." *Id.* ¶ 7. It adds that Eightfold gives "zero transparency," "zero opportunity" to dispute "inaccurate data," and no adverse-action-notice mechanism. *Id.* ¶ 8. But the FAC never identifies the supposedly inaccurate data or any communication by Eightfold about Glenn.

The FAC next alleges that Eightfold's third-party clients "weaponized" Eightfold's algorithms to impose a "retaliatory 'soft hold'" and lock Glenn out of "kinetic gaming platforms" after unspecified "protected ADA activity." *Id.* ¶ 9.

Count I concludes that Eightfold "operates as a Consumer Reporting Agency" and violated FCRA §§ 1681e(b) and 1681g. *Id.* ¶¶ 11–12. Count II alleges that Eightfold violated ADA § 12203(b) because its "algorithmic architecture" lacks "interactive disability accommodations" and because furnishing a "discriminatory AI framework" to clients "directly enabl[ed] and facilitat[ed]" the alleged lockout. *Id.* ¶¶ 14–15.

## LEGAL STANDARD

A complaint must contain enough facts to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts construe pro se pleadings liberally, but "pro se status does not

insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). A pro se plaintiff must still state a plausible claim.*

## ARGUMENT

Neither count states a claim. Count I fails because the FAC does not plausibly allege that Eightfold is a consumer reporting agency, that it furnished a consumer report about Glenn, that any report was inaccurate, or that Glenn requested a disclosure. Count II fails because the FAC identifies neither an ADA right nor any interference by Eightfold.

### I. The FAC does not state a FCRA claim.

Count I fails at every step. The FAC does not plausibly allege that Eightfold is a consumer reporting agency ("CRA"), and it identifies no consumer report about Glenn. Each of Glenn's specific statutory theories has an additional, independent defect.

#### A. The FAC does not plausibly plead CRA status.

The obligations that Glenn invokes apply only to a "consumer reporting agency." As relevant here, § 1681a(f) defines a CRA as a person that "regularly engages in whole or in part in the practice of assembling or evaluating" consumer information "for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

Paragraph 11 largely tracks § 1681a(f)'s language, alleging that Eightfold "operates as a Consumer Reporting Agency" by "assembling and evaluating consumer information for the

* Glenn is proceeding pro se, but he is no stranger to this District. He has filed at least a dozen actions in this Court this year. In one of them, where Glenn also proceeded pro se, Judge Murphy instructed Glenn that an amended complaint asserting FCRA and ADA claims must plead facts supporting a plausible claim for relief. *See Glenn v. Walmart, Inc.*, No. 26-cv-11681-BEM, Dkt. 5 (D. Mass. May 20, 2026). Judge Murphy later dismissed the action. *Id.*, Dkt. 7.

purpose of furnishing consumer reports." FAC ¶ 11. Paragraphs 5–7 add only generalities: Eightfold allegedly extracts and analyzes "massive datasets," builds "shadow dossiers," and packages data into profiling tools for corporate clients. *Id.* ¶¶ 5–7. But the FAC never identifies the information in those datasets, its source, or what consumer information Eightfold itself assembles or evaluates.

*Gundersen v. Equifax Information Services, LLC* illustrates the distinction. There, FICO supplied the scoring algorithm and determined how information would be weighted, but the credit bureaus—not FICO—assembled and evaluated the underlying consumer information. The court therefore held that FICO was not itself a CRA. 683 F. Supp. 3d 1270, 1273–74 (D. Utah 2023). That distinction matters here. The FAC alleges that Eightfold provides profiling tools and a "Match Score," but it does not identify what consumer information Eightfold itself assembles or evaluates, where that information comes from, or what consumer report Eightfold itself furnishes to any third party. Instead, it recites the statutory verbs "assembling and evaluating" and couples them with generalized descriptions of Eightfold's technology. FAC ¶¶ 5–7, 11. Those labels do not plausibly allege that Eightfold plays the role of a CRA rather than that of a technology provider supplying analytical tools.

**B. The FAC does not plausibly plead a consumer report about Glenn.**

Count I also fails because it identifies no consumer report. A "consumer report" is a communication by a CRA bearing on specified characteristics of a consumer that is "used or expected to be used or collected" to determine eligibility for credit, insurance, employment, or another authorized purpose. 15 U.S.C. § 1681a(d)(1). The FAC identifies no such communication about Glenn.

Paragraph 6 alleges generally that Eightfold "packages" data into profiling tools for corporate clients. But the FAC never alleges that Eightfold communicated any information about Glenn to a client.

Paragraph 9 fares no better. It alleges that third parties used Eightfold's algorithms to impose a "soft hold" and deny Glenn platform access. FAC ¶ 9. But alleging that a third party used Eightfold's software does not identify a communication of consumer information furnished by Eightfold. An algorithm in the abstract is not a consumer report. The statute requires a communication of information about a consumer, and the FAC identifies none.

Nor does the FAC allege facts showing that any communication was used, expected to be used, or collected to determine Glenn's eligibility for employment or another purpose covered by § 1681a(d)(1). His assertion that clients use Eightfold tools for "platform and employment decisions," FAC ¶ 7, does not identify any decision about Glenn or any communication used to make one.

**C. The FAC identifies no inaccurate information.**

Even if Glenn had pleaded CRA status and a consumer report, his § 1681e(b) claim would fail.

Section 1681e(b) requires reasonable procedures "to assure maximum possible accuracy." 15 U.S.C. § 1681e(b). A § 1681e(b) plaintiff must show that the report contained a material inaccuracy. *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 96 (1st Cir. 2022). Glenn alleges only "inaccurate data" without identifying anything Eightfold said about him that was false. FAC ¶ 8. That omission defeats the claim.

**D. The FAC alleges no request for a disclosure.**

Section 1681g requires disclosure "upon request." 15 U.S.C. § 1681g(a). Glenn complains of "zero opportunity" to dispute data and no access to an "algorithmic file," FAC ¶¶ 8, 12, but never alleges that he requested a disclosure. The § 1681g claim therefore fails.

**E. The adverse-action allegation states no claim against Eightfold.**

Glenn faults Eightfold for lacking an adverse-action-notice mechanism. *Id.* ¶ 8. But § 1681m(a) imposes that notice duty on the person who takes an adverse action based on a consumer report—not on a CRA merely because it furnished the report. And the FAC alleges that third parties, not Eightfold, imposed the "soft hold" and platform lockout. *Id.* ¶ 9. The alleged lack of a notice mechanism therefore does not state a claim against Eightfold.

**F. Alleged nonregistration adds no claim.**

Count I calls Eightfold an "UNREGISTERED CONSUMER REPORTING AGENCY," but it identifies no FCRA registration requirement. *Id.* ¶¶ 11–12. FCRA imposes no registration requirement of the sort Glenn invokes. Calling Eightfold "unregistered" adds no claim.

**II. The FAC does not state an ADA interference claim.**

Count II invokes 42 U.S.C. § 12203(b), which makes it unlawful to "coerce, intimidate, threaten, or interfere with" someone exercising or enjoying an ADA right. The statute targets interference with a specific right—not any conduct that in some way affects a person with a disability. The challenged conduct must, at minimum, be tied to the exercise or enjoyment of an ADA right. *See Kelly v. Town of Abingdon*, 90 F.4th 158, 173–74 (4th Cir. 2024); *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003). The FAC alleges no such connection.

### A. The FAC identifies no ADA right with which Eightfold interfered.

The FAC says that Glenn engaged in “protected ADA activity.” FAC ¶ 9. It never says what that activity was. Glenn identifies no accommodation he requested, no proceeding in which he exercised an ADA right, and no other right he was exercising when the supposed interference occurred.

Nor does ¶ 15 help. Its references to “interactive disability accommodations” and “federally protected civil rights” are conclusions, not allegations identifying an ADA right. *Id.* ¶ 15. Section 12203(b) protects the exercise or enjoyment of an ADA right; the FAC never identifies one.

### B. The FAC does not allege interference by Eightfold.

Glenn attributes the “soft hold” and platform lockout to third parties, then alleges that Eightfold “enabl[ed] and facilitat[ed]” their conduct by supplying software. *Id.* ¶¶ 9, 15. But he does not allege that Eightfold knew of his protected activity, imposed or directed the lockout, threatened him, or otherwise acted to deter his exercise of an ADA right.

Under *Kelly*, even hostile conduct is not interference unless facts tie it to the exercise of an ADA right. 90 F.4th at 173–74. And *Brown* warns against stretching “interference” to cover “any action whatsoever that in any way hinders a member of a protected class.” 336 F.3d at 1192.

Glenn’s theory stretches that far. Reduced to its essentials: Eightfold supplied software; a third party used it; the third party acted against Glenn; therefore, Glenn says, Eightfold interfered with his ADA rights. Section 12203(b) demands more—coercion, intimidation, threats, or interference *by the defendant*. The FAC alleges none.

## CONCLUSION

The FAC does not plausibly allege that Eightfold is a CRA or that it furnished a consumer report about Glenn. Nor does it identify a material inaccuracy, a disclosure request, an ADA right, or interference by Eightfold. The Court should dismiss the FAC under Rule 12(b)(6).

Respectfully submitted,

*/s/ Jeffrey Paul Ehrlich*
Jeffrey Paul Ehrlich (admitted pro hac vice)
McGuireWoods LLP
888 16th Street, NW
Suite 500
Washington, DC 20006
202-857-1717
jehrlich@mcguirewoods.com

Jessica O'Brien Peretz (BBO# 712595)
McGuireWoods LLP
201 North Tryon Street
Suite 3000
Charlotte, NC 28202-2146
704-343-2395
jperetz@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2026, I served the foregoing Memorandum in Support of Defendant Eightfold AI Inc.'s Motion to Dismiss on Terence Nashawn Glenn by email at Calvinthearchitect1@outlook.com, according to his written consent to electronic service.

*/s/ Jeffrey Paul Ehrlich*
Jeffrey Paul Ehrlich